**CONTINENTAL INSURANCE COM-
PANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**Nos. 237, 238, Dockets 32550, 32673.**

United States Court of Appeals
Second Circuit.

Argued Feb. 6, 1969.

Decided April 15, 1969.

Frederick T. Shea, New York City (Kelley, Drye, Newhall, Maginnes & Warren, and Irving Brand, New York City, on the brief), for petitioner.

Paul J. Spielberg, National Labor Relations Board (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Assistant Gen. Counsel, and Hans J. Lehmann, N.L.R.B., on the brief), for respondent.

Before ANDERSON and FEINBERG, Circuit Judges, and MANSFIELD, District Judge.*

ANDERSON, Circuit Judge:

Continental Insurance Company is a New York corporation engaged in the sale and service of casualty, property and life insurance throughout the United States and Canada. The Company conducts its operations regionally through nine Departments, each serving a different geographic area.[1] Each Department underwrites insurance risks and issues insurance policies; it also evaluates, processes and settles claims through Branch Claims Offices located throughout the Department's territory.

On May 4, 1967, the American Communications Association, Communications Trade Division, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America filed with the National Labor Relations Board a petition seeking to represent all claims adjusters, examiners and investigators in the Company's New York City Branch Claims Office, which is one of three claims offices serving the Metropolitan New York City Department.[2] Shortly thereafter the Union petitioned

---

* Of the Southern District of New York, sitting by designation.

1. These are the Eastern, Metropolitan New York City, Middle, Southeastern, Buckeye, Western, Southwestern, Pacific and Canadian Departments.

2. The Metropolitan New York City Department serves New York City and Westchester, Rockland, Putnam, Nassau and Suffolk counties. There are Branch Claims Offices in Huntington and White Plains in addition to the one in New York City.

for representation of the same groups of employees in the Newark and Perth Amboy, New Jersey, Branch Claims Offices, which are two of nine such offices serving the Middle Department.[3] After a hearing on the consolidated petitions, the Board, on February 1, 1968, ruled that a unit of claims adjusters, examiners and investigators at each of the three Branch Claims Offices was appropriate for purposes of collective bargaining and issued a direction of election. A short time later, the Union lost the election at Perth Amboy but won at both the New York City and Newark offices.

Upon receiving official certification on March 6, 1968, the Union requested recognition and bargaining, but the Company refused to bargain on grounds that the designated units were inappropriate, being limited to single Branch Claims Offices and improperly including claims adjusters. The Board rejected these arguments, held that the Company's interference with employees in the exercise of their rights and refusal to bargain were violations of § 8(a) (1) and (5) of the National Labor Relations Act, and ordered the Company to cease and desist from its unlawful conduct and to bargain with the Union upon request.

■ The principal issue in this petition for review and cross-petition for enforcement is the validity of the Board's decision that the single Branch Claims Offices were appropriate units for collective bargaining. Section 9(b) of the Act places in the hands of the Board the responsibility for making such unit determinations, which, in view of the large measure of informed discretion involved, are to be disturbed only if arbitrary and unreasonable. Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 67 S.Ct. 789, 91 L. Ed. 1040 (1947); NLRB v. St. John's Associates, Inc., 392 F.2d 182 (2 Cir. 1968); NLRB v. Sunrise Lumber &

Trim Corp., 241 F.2d 620, 624 (2 Cir.), cert. denied, 355 U.S. 818, 78 S.Ct. 22, 2 L.Ed.2d 34 (1957)

■ As noted in NLRB v. Solis Theatres, 403 F.2d 381 (2 Cir. 1968), we are not unmindful of the difficulties involved in making unit determinations that, on the one hand, effect the policy of the Act to assure employees the fullest freedom in exercising their rights and, on the other hand, respect the interest of an integrated multi-unit employer in maintaining enterprise-wide labor relations. Each case necessarily requires a balancing of the interests of employer and employees. In this case, we are satisfied that there is substantial evidence in the record to support the Board's determination of that issue.

Each of Continental's nine Departments is headed by a Departmental Manager who bears overall responsibility for Company business within the Department. He is assisted by second-level managers in charge of each of the several functions of the Department—e. g. the claims function is overseen by a Departmental Claims Manager. In addition, each Branch Claims Office is under the supervision of a Branch Claims Manager who is responsible to his respective Departmental Claims Manager. The Metropolitan New York City Department is unique among Continental's Departments because its Departmental Claims Office also serves as the New York City Branch Claims Office.

Continental's operations are in many respects highly centralized in the Company's Home Office or in the Departmental Offices. For example, claims exceeding a specified amount are closely supervised by Departmental personnel. Moreover, final decisions concerning labor relations matters, such as hiring, firing and granting of raises are made at these higher levels in the Company. On the other hand, it is clear from the

---

3. The Middle Department handles Company business in Pennsylvania, New Jersey, West Virginia, Maryland, Delaware, the District of Columbia and parts of Virginia. There are Branch Claims Offices in Baltimore, Maryland; Charleston, West Virginia; Washington, D. C.; and Allentown, Harrisburg, Pittsburgh and Philadelphia, Pennsylvania as well as in Newark and Perth Amboy, New Jersey.

record that each Branch Claims Office in question is a separate autonomous unit, enjoying complete control over the processing of the vast majority of claims. In addition, the Branch Claims Managers possess considerable influence in the final decisions with respect to the personnel matters described above.

On the basis of *Solis Theatres, supra* at 383, however, the Company argues that the Branch Claims Office is an inappropriate bargaining unit because, despite their influence, the Branch Claims Managers lack ultimate "authority to resolve issues which would be the subject of collective bargaining." But the Company's reliance on *Solis Theatres* is misplaced, for its interpretation of that decision would permit any employer to impede unionization merely by centralizing final decisions on labor policies. While the theatre manager's liability to resolve bargaining issues was a significant consideration in *Solis Theatres,* there were additional factors which militated against the Board's decision. For example, the theatre itself could not fairly be characterized as autonomous because its manager lacked decision-making authority in other areas of operation and administration; nor was the designated unit geographically isolated, as there were two other Interboro theatres nearby. Also the pattern of previous and existing unionization of other Interboro theatre employees was circuit-wide. Indeed, on about every test ordinarily prescribed by the Board, the single theatre unit was inappropriate. The holding of *Solis Theatres,* therefore, is that the Board may not, without substantial justification, fractionate a multi-unit operation whose labor policy is centrally directed and administered.

We cannot say that the Board lacked such justification in this case. As noted, each Branch Claims Office enjoys substantial administrative autonomy, and each Branch Manager exerts considerable influence on final decisions in labor matters. Also, the Branch Offices in the Metropolitan Department and especially in the Middle Department are not so geographically compact as to call for a Department-wide unit. Nor was there any significant number of temporary transfers among the Branches. Finally, a Branch unit of claims adjusters, examiners and investigators does not conflict with any previous department-wide unionization of other Company employees. This case is therefore readily distinguishable from the somewhat unusual situation in *Solis Theatres.*

Furthermore, the Company's reliance upon NLRB v. Davis Cafeteria, Inc., 396 F.2d 18 (5 Cir. 1968); NLRB v. Purity Food Stores, Inc., 376 F.2d 497 (1 Cir. 1967) and NLRB v. Frisch's Big Boy Ill-Mar, Inc., 356 F.2d 895 (7 Cir. 1966) is equally misplaced. Those cases involve factual situations different from those present here. While the opinions in those cases placed a great weight on the ability of the unit manager to resolve labor relations matters, they showed an awareness of circumstances which would justify fractionating an employer's organization.

In *Davis Cafeteria, supra* at 21 n. 6, the court factually distinguished, but noted without criticism, cases in which the unit managers had considerable leeway to implement the Company's business programs, in which the unit was geographically remote, or in which there was an almost complete absence of interchange of personnel between units. In *Purity Food Stores, supra,* at 501 n. 4, the court found factually inapplicable a case in which the unit manager had broad authority to purchase items and to hire and fire employees. See also Banco Credito y Ahorro Ponceno v. NLRB, 390 F.2d 110 (1 Cir. 1968) where the First Circuit further limited its language in *Purity Food Stores.* And, in *Frisch's Big Boy, supra* at 896 n. 3, the court implied that geographic isolation could justify a separate unit, even though the unit manager did not have the power to decide matters which are customarily the subjects of collective bargaining. Also, to the extent that State Farm Mutual Automobile Insurance Co. v. NLRB, 411 F.2d 356, motion for rehearing *en banc*

granted (7 Cir. 1968) gives conclusive weight to the single factor of the company's administrative structure and organization we choose not to follow it.

■ Finally, there was reasonable ground for the Board to refuse to treat the Company's insurance adjusters as managerial employees, an exempt group defined by the Board as "those who formulate, determine, and effectuate an employer's policies." American Federation of Labor, 120 N.L.R.B. 969, 973 (1958). The Board's rejection of this claim was well within the reasonable exercise of its discretion. It cannot be held to have acted arbitrarily in deciding that adjusters, whose scope of authority empowered them to pledge their employer's credit from $100 to $2500, are not engaged in policy-making activities.

The petition for enforcement is granted, and the employer's petition for review is denied.