**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MARINOR INNS, INCORPORATED, Respondent.**

**No. 30573.**

United States Court of Appeals, Fifth Circuit.

July 14, 1971.

---

Marcel Mallet-Prevost, Asst. Gen. Counsel, Edward Wendel, Atty., N.L.R. B., Washington, D. C., Harold A. Boire, Director, Region 12, N.L.R.B., Tampa, Fla., for petitioner.

Norman F. Burke, Orlando, Fla., for respondent.

Before WISDOM, Circuit Judge, DAVIS,* Judge, and GOLDBERG, Circuit Judge.

GOLDBERG, Circuit Judge:

In this unfair labor practice case the National Labor Relations Board petitions for enforcement of its order directing Marinor Inns, Incorporated, to bargain with the Board-certified Union [1] representing the Company's employees at its motel in Orlando, Florida. Admitting its refusal to bargain, Marinor seeks absolution on the grounds that the Board both lacked jurisdiction over the underlying representation issue and

---

* Honorable Oscar H. Davis, U. S. Court of Claims, sitting by designation.

1. Hotel, Motel and Restaurant Employees and Bartenders International Union, Local 481, AFL–CIO.

engaged in certain procedural irregularities in resolving the merits of the present unfair labor practice dispute. Finding jurisdiction in the Board and procedural fairness in its determinations, we enforce the order in full.

## I.

In May, 1967, Carolina Motor Lodge of Orlando, Inc., entered into a licensing agreement with Horne's Enterprises, Inc., whereby Carolina would construct a motel and restaurant on contiguous portions of its property in Orlando, Florida. When the buildings neared completion, Carolina executed two separate agreements, leasing the restaurant to Horne's Enterprises and the motel to Marinor. Although Marinor's lease provided that it would obtain a franchise from Horne's, no agreement has been signed. Nevertheless, Marinor operates the motel under the name of Horne's Motor Lodge.

Despite the fact that the motel and restaurant are run by different corporations and pursue independent labor relations policies, the evidence, as might be expected, shows that there is a great deal of interdependence between the two enterprises. Thus, the motel and restaurant share the expense of common advertising billboards, utilize the same switchboard, integrate food and credit services, and provide overflow parking facilities for the patrons of each other. In essence, the motel and restaurant each complement the operations of the other and deal primarily with the same customers.

On March 6, 1969, the Union filed a representation petition and requested that an election be held among Marinor's "maids, Laundry workers, utility workers, porters, housemen and maintenance personnel." During the course of the hearing held on the petition the Company contested the Board's assertion of jurisdiction. Pointing to the fact that the projected gross income of the motel was $400,000, the Company argued that its annual volume of business fell below the Board's jurisdictional minimum of $500,000 for the transient hotel and motel industry. The Regional Director found, however, that the restaurant and motel, although separately managed, were held out to the public as a single, integrated enterprise. Upon this basis the Regional Director aggregated the projected yearly revenues of each for jurisdictional purposes. Since the restaurant's projected gross income was $350,000, the minimum jurisdictional standard was reached by combining the restaurant's revenues with those of the motel.

Marinor, challenging the Regional Director's resolution of the jurisdictional issue, filed a Request for Review, but the Board denied the request on the ground that it raised no substantial issues. Thereafter, on May 29, 1969, in a unit stipulated as appropriate, an election was held, and the Union was subsequently certified as the exclusive bargaining representative of the affected Marinor employees. The Union then requested the Company to commence bargaining, but, in order to obtain judicial review of the representation issue, Marinor refused.

A complaint was duly issued charging Marinor with violations of Section 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (5), (1). In its answer to the complaint the Company admitted its refusal to bargain, but challenged the validity of the Union's certification on the ground that the Regional Director erroneously aggregated the motel and restaurant revenues to find jurisdiction. On March 4, 1970, the Board granted its General Counsel's motion for summary judgment. Finding that the jurisdictional issue had been disposed of correctly by the Regional Director, the Board held that the Company had violated section 8(a) (5) and (1) by refusing to bargain with the certified representative of its employees in an appropriate unit. Pursuant to section 10(c) of the Act, 29 U.S.C.A. § 160(c), the Board ordered Marinor to cease and desist from the unfair labor

practices found, to bargain collectively with the Union upon request, and to post the appropriate notices. The Board now petitions for enforcement of this order.

## II.

Marinor's principal objection to the enforcement of the Board's order, of course, is that in the underlying representation case upon which the order is based the Board's Regional Director erred in asserting jurisdiction.

It is undisputed that the Board has statutory jurisdiction over Marinor, for it has long been noted that in extending the Board's jurisdiction to any unfair labor practice "affecting commerce," National Labor Relations Act § 10(a), 29 U.S.C.A. § 160(a), "Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." NLRB v. Reliance Fuel Corp., 1963, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (emphasis in original). Marinor's yearly out-of-state purchases of supplies and materials for the motel exceed $1,900, and its yearly collections on credit cards from outside Florida exceed $144,000. It is therefore perfectly clear that its motel operation "affects commerce" within the meaning of the statute.

However, the Company correctly notes that the Board has never aspired to exercise its full measure of statutory jurisdiction. Almost from its inception in 1935, limited financial and personnel resources have led the Board to decline jurisdiction over many cases falling within the boundaries of constitutional regulation. The rationale for these declinations has generally been an insignificant quantitative effect on commerce, and this dollars-and-cents approach has led to the introduction of guidelines, or "yardsticks," to guide the exercise of the Board's jurisdictional assertions. *See generally* Hollow Tree Lumber Co., 91 N.L.R.B. 635 (1950); Siemons Mailing Serv., 122 N.L.R.B. 81 (1958); ABA Labor Relations Section, The Developing Labor Law 762–18 (C. Morris ed. 1971); A. Cox & D. Bok, Cases on Labor Law 143–44 (1965).

Drawing upon its broad discretion to determine when a jurisdictional exercise will serve the objectives of the Act,[2] the Board has established certain yardsticks for the hotel and motel industry. The standard established by the Board for exercising jurisdiction over transient motels, such as the one operated by Marinor, is an annual gross income in excess of $500,000. Floridian Hotel of Tampa, Inc., 124 N.L.R.B. 261 (1959). Since Marinor's projected gross income from its motel is only $400,000, the Company contends that the Board has breached its self-limiting standards.

The short answer to Marinor's argument is that even where the Board, in asserting jurisdiction, has violated, on an ad hoc basis, its self-imposed jurisdictional guidelines, it has been held that absent "extraordinary circumstances" the courts should not intervene. NLRB v. WGOK, 5 Cir. 1967, 384 F.2d 500; NLRB v. National Survey Serv., Inc., 7 Cir. 1966, 361 F.2d 199; NLRB v. Carroll-Naslund Disposal, Inc., 9 Cir. 1966, 359 F.2d 779; NLRB v. Carpenters Local 2133, 9 Cir. 1966, 356 F.2d 464; NLRB v. W. B. Jones Lbr. Co., 9 Cir. 1957, 245 F.2d 388. However, we need not rely solely on this line of cases, for we find that the Board, in approving the

2. The Board's discretionary power is codified at § 14(c) (1), 29 U.S.C.A. § 164(c) (1). That section provides:

"(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided*, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959."

aggregation of the gross income of the motel with that of the restaurant, was following a well-established exception to the *Floridian Hotel* standard. *Cf.* Herbert Harvey v. NLRB, D.C.Cir. 1969, 137 U.S.App.D.C. 282, 424 F.2d 770. In Trade Winds Motor Hotel & Restaurant, 140 N.L.R.B. 567 (1963), the Board held that it would effectuate the policies of the Act to assert jurisdiction over a motel and adjoining restaurant, whose combined gross revenue exceeded $500,000, where the two separately operated businesses were "held out to the public as one single integrated enterprise." The Board noted:

> "* * * We find further, though Mitchell's gross volume of revenues received in 1961 fell short of the Board's standard for the hotel industry, that, under the circumstances of this case, it will effectuate the policies of the Act for the Board to assert jurisdiction herein. The enterprise in this case, albeit separately operated by Mitchell and Funston, is held out to the public as one single integrated enterprise, i. e., Trade Winds Motor Hotel and Restaurant, the name under which Mitchell admittedly does business and which the restaurant may not change without Mitchell's permission. The operations occupy a common situs, share the same parking facilities, serve essentially the same class of customers, and supplement each other. In view of these factors, we find that the impact exerted upon commerce of a labor dispute at the Employer's operation is certainly equal to, if not appreciably greater than, that exerted by the normal motel operation with gross revenues of $500,000 over which we are required to assert jurisdiction. Accordingly, we shall assert jurisdiction over the Employer's operations.

> "In exercising jurisdiction herein, we are not departing from our policy, applied in normal cases, to utilize the jurisdictional standards as the dividing line between assertion and nonassertion without regard to the closeness of the actual amount to the minimum set by the standard in question. We are merely finding in an unusual case that it is not 'subversive' of the standards to assert jurisdiction where there is a substantial effect upon commerce notwithstanding the fact that Mitchell's revenues separately fall below the standards in monetary value." 140 N.L.R.B at 568 (footnotes omitted).

*See also* Sands Motor Hotel, 162 N.L.R.B. 863 (1967); Bloch Enterprises, 172 N.L.R.B. No. 191 (1968); Milco Importers, Inc., d/b/a Denney's Restaurant No. 3, 177 N.L.R.B. No. 86 (1969) (all applying *Trade Winds* formula).

Marinor argues, however, that *Trade Winds* and its progeny involved lessor-lessee relationships between the owners or operators of the motel and adjoining restaurant. Since no such relationship exists in the instant case, the Company contends that the *Trade Winds* standard is inapposite. We disagree. The essence of the *Trade Winds* test of holding out to the public as a single enterprise is not based upon the legal relationship between the two adjoining entities but instead on whether the two entities, considered as a whole, are so interrelated that a labor dispute at one will have a similar, if not greater, impact on the public as would a dispute at a singly-operated motel complex of comparable quantitative size. In the instant case the Board found that a majority of the patrons of Horne's Motor Lodge utilized, and thought of, the restaurant and motel facilities as a single integrated enterprise, not as separate atomized entities. The potential impact of a labor dispute at the motel, the Board held, would therefore not be limited by the legalities of corporate divisibility. Considering the integrated and supplementary nature of the operation of the motel and restaurant in the present case, this finding by the Board that the *Trade Winds* test was satisfied is clearly supported by substantial evidence.

Nor do we agree with the Company that the *Trade Winds* standard is

arbitrary and capricious within the meaning of the Administrative Procedure Act, 5 U.S.C.A. § 706. The Board's de minimis approach to its jurisdictional assertions is wholesomely pragmatic. It would be inconsistent with this positivistic tradition to accord corporate fragmentation or separateness a controlling significance. Recognizing that public use of or access to facilities free of stifling labor strife is the desideratum of the labor act, the Board, therefore, has refused to be curtailed by monetary irons or by rigid constructions as to the oneness of facilities. The resulting *Trade Winds* formula strikes us as a rational attempt to assure that jurisdiction will be asserted in those motel industry cases having an impact upon commerce equal to that found in the typical motel complex dispute which meets the *Floridian* standard. The Board's "holding out" criteria for determining when to aggregate revenues are closely correlated to the potential impact upon commerce and sufficiently explicit to prevent arbitrary action. In reaching this conclusion we bear in mind the words of Judge Robinson of the District of Columbia Circuit in Herbert Harvey v. NLRB, *supra*, 424 F.2d at 783:

"Administrators, no less than judges, may differ in their views on the same subjects without becoming arbitrary—even in their views as to whether two not unlike subjects require similar or dissimilar treatment. Certainly when the administrative determination on that score stays within the zone of reasonableness, we are not at liberty to upset it simply because

another determination might also be logical. * * *" (footnotes omitted).

We therefore hold that the Regional Director and the Board properly asserted jurisdiction over the representation proceedings at Marinor's Orlando motel.

### III.

The Company next argues that, even assuming jurisdiction, procedural defects in the administrative proceedings below vitiate the Board's bargaining order. In the representation case, underlying the present unfair labor practice dispute, a plenary hearing was conducted, wherein the jurisdictional issue was fully litigated. Following the Regional Director's adverse determination, Marinor petitioned the Board for review, but the motion was denied.[3] In the subsequent unfair labor practice proceedings following the Company's refusal to bargain, the Board's General Counsel, noting that no new evidence was offered by the Company, moved the Board for summary judgment. Finding that the only issue raised by the Company, that of Board jurisdiction, had been fully litigated in the representation proceedings and agreeing with the Regional Director's jurisdictional conclusions, the Board granted the motion for summary judgment. *See* 29 C.F.R. § 102.67(f).

Marinor does not challenge the utilization of summary judgment in disposing of this case. It is now well settled that, absent a proffer of newly discovered or previously unavailable evidence, the Board need not permit reliti-

---

3. The Board exercises only discretionary review over representation determinations of its Regional Directors. Thus, 29 C.F.R. § 102.67(c) provides:

"(c) The Board will grant a request for review only where compelling reasons exist therefor. Accordingly, a request for review may be granted only upon one or more of the following grounds:

(1) That a substantial question of law or policy is raised because of (i) the absence of, or (ii) a departure from, officially reported Board precedent.

(2) That the regional director's decision on a substantial factual issue is clearly erroneous on the record and such error prejudicially affects the rights of a party.

(3) That the conduct of the hearing or any ruling made in connection with the proceeding has resulted in prejudicial error.

(4) That there are compelling reasons for reconsideration of an important Board rule or policy."

gation in an unfair labor practice case of issues once aired in a related representation proceeding. Pittsburgh Plate Glass Co. v. NLRB, 1941, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; NLRB v. Mar Salle, Inc., D.C. Cir. 1970, 425 F.2d 566; Southwestern Portland Cement Co. v. NLRB, 5 Cir. 1969, 407 F.2d 131, cert. denied, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71; NLRB v. Union Bros., Inc., 4 Cir. 1968, 403 F.2d 883. When this principle against relitigation is applicable, as it is here, the Board's use of summary judgment is clearly permissible. NLRB v. Clement-Blythe Companies, 4 Cir. 1969, 415 F.2d 78; NLRB v. Union Bros., Inc., *supra*. Nor does the Company now object to the Board's entertaining the motion for summary judgment in the first instance rather than following the usual procedure of lodging the motion with a Regional Director with referral to a trial examiner for initial consideration.[4] Instead, the Company's objection to the Board's procedure, as we understand it, is a narrow one. Conceding that the filing of the General Counsel's motion for summary judgment directly with the Board was proper, Marinor contends that the Board erred in not formally notifying Marinor of this expedited procedure. This argument is without merit. Since the General Counsel's motion was served upon Marinor, and since Marinor promptly responded to that motion by filing its answer directly with the Board, we see no prejudice in the lack of formal notice. Marinor was apprised of the fact that the motion had been lodged initially with the Board. Any further motions the Company wished to make obviously could have been filed directly with the Board.

■ The Company finally argues that even if the matter was properly before the Board for consideration on the merits, the Board nevertheless violated the rule in Pepsi-Cola Bottling Co. v. NLRB, 2 Cir. 1969, 409 F.2d 676, cert. denied, 396 U.S. 904, 9 S.Ct. 219, 24 L.Ed.2d 181. The Second Circuit there held that where, pursuant to section 3(b) of the Act, 29 U.S.C.A. § 153(b), the Board has delegated its power to decide representation issues to a Regional Director and has denied review of his determinations in the representation case, the Board must, in the related unfair labor practice case, review the record which was before the Regional Director and determine the correctness of his decision. However, whatever the applicability of *Pepsi Cola* to the facts of this case,[5] that decision has recently been overruled by the Supreme Court in Magnesium Casting Co. v. NLRB, 1971, 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed.2d 735. In *Magnesium Casting* the Court held that the Congressionally authorized delegation of decision making power to Regional Directors in representation cases, even absent ultimate Board review, created no infirmity in the administrative scheme. We therefore reject the Company's final objection based upon *Pepsi Cola*, and, in light of the foregoing, grant the Board's petition for enforcement of its order.

Enforced.

4. In the proceedings below Marinor did challenge this procedure but has failed to raise the issue on appeal. While 29 C.F.R. §§ 102.24, 102.25, and 102.26 do contemplate that motions shall ordinarily be referred to a Regional Director and initially considered by a Trial Examiner, those regulations do not proscribe the Board from considering motions itself in the first instance. 29 C.F.R. § 102.50; NLRB v. Red-More Corp., 9 Cir. 1969, 418 F.2d 890; NLRB v. Union Bros., Inc., supra.

5. The Board contends that while it denied review of the Regional Director's findings in the representation case, it reviewed in the unfair labor practice proceedings below the evidence upon which the Director's findings were based and expressly adopted his conclusions as its own. Thus, the Board argues, the *Pepsi Cola* mandate was followed. The Company, on the other hand, asserts that the Board's "review" in the unfair labor practice proceedings was nothing more than a pro forma attempt to satisfy *Pepsi Cola*, which should not be held sufficient.