OCHSNER CLINIC, Petitioner-Cross Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.

No. 72–1703.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1973.

Andrew P. Carter, David E. Walker, New Orleans, La., for petitioner-cross respondent.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Charles M. Paschal, Jr., Regional Director, New Orleans, La., William R. Stewart, N.L.R.B., Washington, D. C., for respondent-cross petitioner.

Before JOHN R. BROWN, Chief Judge, and MOORE * and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge.

Ochsner Clinic challenges the order of the National Labor Relations Board certifying the Union [1] as the bargaining representative of its 22 X-ray technicians on the grounds that (i) the activities of the clinic are not within the coverage of the Act and (ii) even if these activities were covered, the Board failed to choose the appropriate bargaining unit. Finding these contentions to be substantially without merit, we grant the Board's petition for enforcement.

*Coverage .*

The Clinic asserts that the Board has departed from all prior practice in assuming jurisdiction over the employer-employee relations within a medical clinic. This is incorrect. It is true, as Ochsner asserts, that prior to the case of Mayo Clinic, 168 NLRB 557 (1967), the Board had declined to take jurisdiction over voluntary associations of physicians. Nevertheless, in that case, and in the subsequent case of Quain and Ramstad Clinic, 173 NLRB 1185 (1968), the Board did assume jurisdiction where the employer was not primarily engaged

* Honorable Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

1. The Social Economic Organization of Staff Radiologic Technologists, apparently a purely local organization.

208

in education and research or operating a non-profit hospital and did have an impact upon interstate commerce.[2]

 Those criteria are met here. Ochsner is not engaged primarily in education and research so as to come within the purview of the congressional purpose in exempting non-profit hospitals from the Labor Management Relations Act.[3] But Ochsner does have a substantial impact upon interstate commerce. Not only was it expressly stipulated by the parties that Ochsner did a gross volume during the preceding six months in excess of $250,000 and purchased materials and supplies in excess of $50,000 during the period, but the record indicates that the partnership of some 200 physicians employs over 500 nurses, technicians, clerks, and other medical assistants.

 Ochsner asserts that *Mayo Clinic* is not valid authority for the Board's asserting jurisdiction—ties to interstate commerce notwithstanding—because there *both* parties petitioned the Board to assert its jurisdiction. Clearly, this is irrelevant—the Board's decision whether to assert power over the

parties is one of administrative discretion. NLRB v. Marinor Inns, Inc., 5 Cir., 1971, 445 F.2d 538, 541; NLRB v. WGOK, Inc., 5 Cir., 1967, 384 F.2d 500. Indeed, the congressional purpose to allow the Board to decline jurisdiction in an appropriate case is embodied in the statute.[4] Thus, any prior instance where the Board declined to assert jurisdiction —Ochsner cites no cases of such abstention—would not preclude the power here.[5]

*Appropriate Unit*

 The contention that the Board failed to choose the most appropriate unit is without merit. It is so well established [6] that the Board has wide authority under Section 9(b) to determine the proper bargaining unit, we need only state a few of the facts which indicate the Board made an appropriate choice in this case. At Ochsner Clinic, there are approximately 150 skilled technicians whose fields range from audiology to urology, and perhaps two dozen other areas in between.[7] The radiological

2. Coverage under the National Labor Relations Act is, of course, coextensive with the powers of Congress under the Commerce Clause. NLRB v. Reliance Fuel Oil Corp., 1963, 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279; Bob's Casing Crews, Inc. v. NLRB, 5 Cir., 1970, 429 F.2d 261, 262.

3. 29 U.S.C.A. § 152(2).

4. "The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction * * *." 29 U.S.C.A. § 164(c)(1).

5. We find no merit in the contention that the Board was required by the Administrative Procedure Act to explain its assumption of jurisdiction. The actual assumption of jurisdiction in a real case is itself reviewable and no prior adjudication

of the Board's reversal of policy (if any there was) was necessary, particularly in the absence of a record. We have such a record in this case.

6. See NLRB v. WKRG–TV, Inc., 5 Cir., 1973, 470 F.2d 1302, 1311 [1973].

7. These specialties are Cardiovascular Technician, Claims Analyst, Clinic Coding Desk, Contact Lens Technician, Dietitian, Dispensing Optician, EEG Technician, EKG Technician, ENG Technician, Floating R.N. or L.P.N., Hospital Coding Desk, Interpreter, IVP Nurse, Kine Technician Licensed Practical Nurse, Life Insurance Analyst, Medical Photographer, Medical Secretarial Production and Work Flow Analyst, Nurse Technician, Ophthalmology Technician, Ophthalmology Technician and Secretary, Oral Surgery Technician, O.R. Technician, Orthopaedic Assistant, Orthopaedic Technician, Photographic Quality Control Clerk, Registered Nurse, Training Director AOMF School of Radiological Technologists, X-Ray Dark Room Attendant, X-Ray Technician—Clinic Side, X-Ray Technician—Hospital Side.

technologists (or X-ray technicians), 22 in number, form a separate department from other technicians. They are supervised independently of other clinic employees. They are subject to hire and discharge by the Chief Radiological Technologist, not the Personnel Department. Their salaries are established independently of other departments in the Clinic. Each technician must be registered by the American Registry of Radiological Technologists, a process which usually requires about two years of specialized training. Also, the X-ray technicians generally work in a separate area of the clinic, and have only limited interaction with other departments. Clearly, there were enough factors present here to sufficiently distinguish the X-ray technicians from other departments as a separate unit, appropriate for bargaining purposes. The unit chosen need not be the most appropriate, but only one which is appropriate under the circumstances. NLRB v. Li'l General Stores, Inc., 5 Cir., 1970, 422 F.2d 571, 573; NLRB v. Zayre Corp., 5 Cir., 1970, 424 F.2d 1159, 1165.

Finally, there is no indication here that there is *any* other organization either in existence or likely to be formed which could or would take on representation of such a coterie of diverse technicians. We do not suggest this is decisive, but it is certainly a factor since the Act contemplates *representation*. There can be no representation unless there is one to do the representing.

With this inherent discretion vested in the Board, we need not attempt to pierce the reasoning of the Board with X-ray precision. Rather we only need to satisfy ourselves that no arbitrary or capricious action can be detected which infects the decision. See Spartans Industries, Inc. v. NLRB, 5 Cir., 1969, 406 F.2d 1002, 1005.

Enforced.

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part. I.