**SZABO FOOD SERVICES, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 72, Docket 76-4100.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1976.

Decided Dec. 27, 1976.

---

Joseph C. Wells, Washington, D. C. (Bernard J. Casey, and Reed, Smith, Shaw & McClay, Washington, D. C., on the brief), for petitioner.

Allison W. Brown, Jr., Atty., N.L.R.B., Washington, D. C. (John S. Irving Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliot Moore, Deputy Associate Gen. Counsel, Grant E. Morris, Atty., N.L.R.B., Washington, D. C., on the brief), for respondent.

Before SMITH, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Petitioner Szabo Food Services, Inc. (the employer) has petitioned to review and to have set aside an order of the National Labor Relations Board (the Board), 222 N.L.R.B. No. 193 (1976), ordering it to bargain with Local 217 of the Hotel and Restaurant Employees and Bartenders Union, AFL–CIO (the union) and to cease and desist from refusing to bargain and interfering with employees' exercise of their rights in violation of §§ 8(a)(5) and (1) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(5) and (1) (1970). The Board has cross-petitioned to enforce its order.

The single question presented is whether the Board erred in determining that the collective bargaining unit in question was appropriate. We hold that it did. We grant the petition to review, set aside the order and deny enforcement.

I.

The employer is an industrial food service contractor primarily engaged in the operation of cafeterias and food catering services. It has a contract with the United Aircraft Corporation (United Aircraft) to provide such services in nineteen cafeterias at ten United Aircraft locations in Connecticut. The employer considers these nineteen cafeterias in Connecticut to be a single operating unit (that is, an operating "cost center"), referred to as its United Aircraft district. District headquarters is located at East Hartford. The administration of the district is highly centralized. Each local manager reports to one of three area supervisors who in turn reports to the overall district manager. The employer's business is highly integrated. All units are administered pursuant to a single contract with United Aircraft. All facets of the food service operation—including menus, food prices, methods of preparation and purchasing (which is directed by a corporate vice-president in Chicago)—are identical at each of the cafeterias. All baked goods are prepared at the central kitchen in East Hartford and delivered to the other locations.

The union sought a collective bargaining unit composed of the three cafeterias at the Bridgeport and Stratford plants which comprise the Sikorsky Division of United Aircraft. Those plants are located five miles apart and are treated as a single operation. They have a combined work force of about fifty employees and share a local manager. The Regional Director denied the union's petition for certification on the ground that the unit requested was not an appropriate bargaining unit. The Board reversed the decision of the Regional Director, Member Kennedy dissenting. After a majority of those who cast votes in the Board-directed election voted for the union, the union was

certified as the exclusive bargaining representative of all food service employees in the employer's Sikorsky Division. The employer refused to bargain with the union, claiming that the bargaining unit was inappropriate. The Board, rejecting the employer's argument, found that the employer had violated §§ 8(a)(5) and (1) of the Act and ordered the employer to cease and desist. The employer now petitions this Court to review and set aside the Board's order. The Board cross-petitions to enforce the order.

## II.

Our scope of review is narrow. The "issue as to what unit is appropriate for bargaining . . . involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." *Packard Motor Car Co. v. NLRB*, 330 U.S. 469, 491 (1947). The parties agree that the Board's unit determination may be overturned only if arbitrary, unreasonable, and not supported by substantial evidence. See *Wheeler-Van Label Co. v. NLRB*, 408 F.2d 613, 616 (2 Cir.), *cert. denied*, 396 U.S. 834 (1969); *Empire State Sugar Co. v. NLRB*, 401 F.2d 559, 562 (2 Cir. 1968). They also agree that the unit designated "need not be the only appropriate unit, nor even the most appropriate unit", but "need only be *an* appropriate unit", *MPC Restaurant Corp. v. NLRB*, 481 F.2d 75, 78 (2 Cir. 1973) (emphasis in original), as long as the Board does not give controlling weight to the extent to which the union has organized the particular unit. *NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438 (1965); § 9(c)(5) of the Act, 29 U.S.C. § 159(c)(5) (1970).

■ We hold, based on our review of the evidence relied on by the Board, that the Board's order is not supported by substantial evidence and therefore is arbitrary and unreasonable.

In determining that the Sikorsky Division is an appropriate bargaining unit, the Board relied on the following factors to support its finding that the employees at the three Sikorsky cafeterias "have a community of interest separate and distinct from the broader one they share with other district employees":

"First, and foremost, the requested employees are under the common immediate supervision of a single manager by virtue of the fact that the three Sikorsky Division cafeterias are grouped together as a single unit or cost center for purposes of accountability. Also, despite the integration of all operations of the district, the Sikorsky unit manager retains significant control over day-to-day operations, especially with regard to discharge of employees for serious misconduct and the hiring of replacements. Geographically, the Sikorsky plants are but 5 miles apart and the next closest cafeteria is 14 miles away. Temporary interchange of employees appears to involve for the most part special functions and does not occur on a regular or frequent basis. Finally, there is no history of bargaining for employees in the district and no labor organization is seeking to represent the broader unit favored by the Employer."

We hold that the Board, in making the determination referred to above, distorted some evidence and ignored or overlooked other contrary evidence. Its findings regarding the separateness of the Sikorsky unit as a "cost center", the authority of the local manager, and the extent of interchange among employees throughout the district, are not supported by substantial evidence. In short, in making the "community of interest" determination, the Board elevated the factors of geographical proximity and the extent of union organization over the factors of complete integration of the employer's managerial structure and labor relations policy.

We hold that the Board erred in according as much significance as it did to the fact that the Sikorsky unit is designated a separate "cost center" for accounting purposes. Rather than being a production or accounting entity for whose performance the local manager is in any way responsible, the evidence established that the cost center is no more than an informational subdi-

vision used to facilitate the collection and analysis of data on the performance of the United Aircraft district as a whole. The entire United Aircraft district is the employer's cost center for operational purposes. The only potentially significant aspect of the Sikorsky unit's separateness as one cost center is that all three of its cafeterias are under the immediate supervision of one local manager. The Board distorted the significance of this factor by exaggerating the control exercised by the local manager over labor and administrative matters.

We also hold that the Board's finding that the unit manager possesses autonomy and authority is not supported by substantial evidence. As stated above, the local manager is subordinate to one of three area supervisors who in turn is subordinate to the United Aircraft district manager. The employer's labor relations policy for all ten locations is controlled and implemented on a day-to-day basis by the district manager. He establishes the same wages, benefits, employee classifications, and terms and conditions of employment at all the cafeterias; he determines the number of employees at each location; he directs and controls promotions and transfers; he makes final determinations on layoffs; he finally resolves grievances; he controls and administers discipline; and he has final authority on substantially all aspects of labor relations. The authority of the unit manager is limited to talking to employees, hiring employees as replacements in entry level jobs, firing employees for extraordinary misbehavior such as assault and battery, and making recommendations for promotions. Nor does the unit manager have any independent authority in non-labor business activities such as the food acquisition or payroll and accounting processes.

In finding a separate community of interest among the Sikorsky unit employees, the Board considered as significant their geographical proximity. Although geography may be a relevant factor, see *Banco Credito y Ahorro Ponceno v. NLRB*, 390 F.2d 110, 112 (1 Cir.), *cert. denied*, 393 U.S. 832 (1968), it is not conclusive and should be taken only as an indication of whether employees in the bargaining unit under consideration share a community of interest separate and distinct from those in other parts of the employer's operation. In *Banco Credito*, for example, where an isolated branch bank forty miles from San Juan was held to be an appropriate bargaining unit, the branch manager had significantly more de facto authority than the local manager in the instant case (and more responsibility than the managers of other branches); only two employee transfers out of 206 in two and a half years involved the outlying branch; and the geographical separateness of the branch in *Banco Credito* was only one of several factors that contributed to its being found to be an autonomous unit whose designation as a separate bargaining unit would not detract from stable overall collective bargaining.

Here, in contrast, the community of interest with respect to every significant facet of employment exists on a district-wide basis. See *NLRB v. Pinkerton's, Inc.*, 428 F.2d 479, 484, 485 (6 Cir. 1970). It cannot be said that the Sikorsky unit is so distant from the other cafeterias as to make their interests different from those of the other employees in the district. That the Bridgeport and Stratford plants are within five miles of each other is a relevant consideration, but not an overwhelming one in view of the fact that the greatest distance between plants within the entire district is only 65 miles.

Whatever geographical isolation exists is counter-balanced by the level of employee interchange among the district's plants. Among the 415 employees there were 700 temporary transfers during the preceding year. The Board found that only 16% of these transfers involved the Sikorsky cafeterias but ignored the evidence that the Sikorsky unit represents only about 12% of the district-wide work force. Even though many of the temporary transfers may have been for special functions, all the transfers were controlled by the area supervisor and the district manager. Moreover, employees

regularly are promoted to other locations throughout the district.

The factors identified and relied on by the Board do not amount to the "substantial justification" required to "fractionate a multi-unit operation whose labor policy is centrally directed and administered." *Continental Insurance Co. v. NLRB*, 409 F.2d 727, 729 (2 Cir.), *cert. denied*, 396 U.S. 902 (1969); see *NLRB v. Solis Theatre Corp.*, 403 F.2d 381 (2 Cir. 1968). In *Solis* we noted that "[t]he Courts of Appeals have been reluctant to sanction bargaining units whose managers lack the authority to resolve issues which would be the subject of collective bargaining." 403 F.2d at 383. *Continental Insurance* limited *Solis* only to the extent of refusing to treat an employer's centralized labor policy alone as a bar to the certification of one unit of a multi-unit operation as an appropriate bargaining unit. In *Continental Insurance* the record established that, although labor policy was centralized, business activity was decentralized in some respects in that "each Branch Claims Office in question is a separate autonomous unit, enjoying complete control over the processing of the vast majority of claims. In addition, the Branch Claims Managers possess considerable influence in the final decisions with respect to . . . personnel matters. . . ." 409 F.2d at 729. We distinguished *Solis* on the ground that it was based on factors, not present in *Continental Insurance*, other than the inability of the unit manager to resolve labor problems:

> "While the theatre manager's [inability] to resolve bargaining issues was a significant consideration in *Solis Theatres*, there were additional factors which militated against the Board's decision. For example, the theatre itself could not fairly be characterized as autonomous because its manager lacked decision-making authority in other areas of operation and administration; . . . ." 409 F.2d at 729.

See *Solis, supra*, 403 F.2d at 383. The same applies to the local manager in the instant case. True, there were additional factors in *Solis* not present here, such as geographical proximity to other theatres and a history of circuit-wide unionization, that made the single theatre an inappropriate bargaining unit. For the reasons stated above, however, in our discussion of the evidence relied on by the Board, we do not view the factors distinguishing this case from *Solis* as sufficiently weighty to support the Board's decision here.

We are compelled to conclude that the Board approved the Sikorsky unit as a bargaining unit by giving controlling weight to the extent of organization at the Sikorsky plants in contravention of § 9(c)(5) of the Act. The geographical factor is the only factor relied on by the Board that is supported by substantial evidence, but we hold that the Board's reliance on this factor was unwarranted. The Board has not given any reasons why the minimal distances involved establish a separate community of interest for the Sikorsky employees. Geographical location has no impact on the employer's operations. The functional integration of the United Aircraft district is not in dispute. The geographical separation here is not significant enough by itself to warrant piece-meal unionization of this employer's district-wide operation which is governed by the terms of one contract providing for the performance of one service for one customer. The Board must "respect the interest of an integrated multi-unit employer in maintaining enterprise-wide labor relations." *Solis, supra*, 403 F.2d at 382. In view of the high degree of integration of the employer's United Aircraft district business operation, the practical necessities of collective bargaining militate against the creation of a fractured bargaining unit, with its attendant distortion of the employer's business activities and labor relations on a district-wide basis.

We hold that the Board's determination that the bargaining unit in question is an appropriate collective bargaining unit is not supported by substantial evidence and therefore is arbitrary and unreasonable.

Petition to review granted; order set aside; and enforcement denied.