**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**J. W. MAYS, INC., Respondent.**

**No. 588, Docket 81–4154.**

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1982.

Decided Feb. 17, 1982.

Opinion April 2, 1982.*

---

* This opinion was originally handed down as a summary order granting enforcement, but upon request of the Board is herewith republished as a per curiam opinion.

Ruth Ihne, N. L. R. B., Washington, D. C. (William Wachter, Atty.; William A. Lubbers, Gen. Counsel; John E. Higgins, Jr., Deputy Gen. Counsel; Robert E. Allen, Acting Associate Gen. Counsel; Elliot Moore, Deputy Associate Gen. Counsel, Washington, D. C.), for petitioner.

Seymour Miller, Miller & Seeger, New York City, for respondent.

Before OAKES and NEWMAN, Circuit Judges, and HAIGHT,** District Judge.

PER CURIAM:

This is an application by the National Labor Relations Board for enforcement of its order against J. W. Mays, Inc., issued on December 12, 1980 and reported at 253 N.L.R.B. No. 93. The Board found that the company violated sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5), (1), by refusing to bargain with the Independent Union of Security Officers, which the Board had certified as the representative of separate units of guards at the company's Manhattan and Woodmere stores. The company, while admitting its refusal to bargain, argues that certification of the union was improper because the Board abused its discretion in

selecting single stores as bargaining units, in finding that the union is not disqualified from certification as the representative of guards under section 9(b)(3), *id.* § 159(b)(3), and in finding that guards designated "sergeants" and "corporals" are not supervisors as defined by section 2(11), *id.* § 152(11).

The Board did not abuse its discretion in determining that single-store units of guards are appropriate. As this court and the Supreme Court have noted, the Board has wide discretion in determining what constitutes an appropriate bargaining unit. *See South Prairie Construction Co. v. Local 627*, 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (per curiam) (quoting *Packard Motor Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947) (the decision, "if not final, is rarely to be disturbed")); *NLRB v. Hudson River Aggregates, Inc.*, 639 F.2d 865, 871 (2d Cir. 1981) (the Board's decision "will not be disturbed unless found to be arbitrary"); *Szabo Food Services, Inc. v. NLRB*, 550 F.2d 705, 707 (2d Cir. 1976) ("the Board's unit determination may be overturned only if arbitrary, unreasonable, and not supported by substantial evidence").

Despite the centrality of the company's management and labor relations, the record contains ample evidence supporting the Board's choice of single-store units. The company's reliance on *NLRB v. Solis Theatre Corp.*, 403 F.2d 381 (2d Cir. 1968), is misplaced; as this court noted in *Continental Insurance Co. v. NLRB*, 409 F.2d 727, 729 (2d Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 215, 24 L.Ed.2d 178 (1969), in *Solis Theatre* the Board's choice of single-theatre units ignored the geographic proximity of other theatres and the circuit-wide pattern of unionization of other employees. Here, in contrast, the company presented no evidence of company-wide unionization,[1] and

** Of the Southern District of New York, sitting by designation.

1. We take note of but attach no significance to the Company's assertion in its petition for rehearing that, just after the Board's Order in this case, another union representing the non-

guard employees negotiated a company-wide agreement with the Company. The Company makes no claim that this union did not place itself in a position to negotiate an agreement applicable to all stores by winning a majority at individual stores, which the Board treated as

the geographic factor militates against a company-wide unit.

In addition to the geographic factor and the lack of evidence of company-wide unionization of other employees, the Board's decision is supported by record evidence of the influence of local supervisors and of an almost complete lack of contact between employees at different stores. We also believe that the Board could properly rely on its presumption in favor of single-store units, *see Haag Drug Co.*, 169 N.L.R.B. 877 (1968), which did not figure in the court's decisions in *Szabo Food* or *Solis Theatre.* We decline to follow the Tenth Circuit's decision in *Presbyterian/St. Luke's Medical Center v. NLRB*, 653 F.2d 450 (10th Cir. 1981) (holding that the Board's use of the presumption in representation proceedings is inconsistent with its burden of persuasion in the unfair labor practice proceedings), *cert. filed*, 50 U.S.L.W. 3422 (U.S. Nov. 24, 1981) (No. 81–876), at least to the extent that it applies outside of the health-care industry. In short, given the substantial evidence supporting the choice of single-store units in this case, the Board's decision was not arbitrary.

 Likewise, the Board acted reasonably in ruling that the union was not disqualified under section 9(b)(3). That section provides that a union cannot be certified as the representative of guards if it "admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards." There was no evidence here that nonguards were members of the union. That one of the union's three officers/members was working part-time in a nonguard capacity was properly disregarded; in a fledgling union with no funds, such employment was a necessary and temporary expedient wholly unrelated to the purpose of the law's prohibition. The union was not purporting to represent Smith in his nonguard capacity. *See Sentry Investigation Corp.*, 194 N.L.R.B. 1074 (1972). The union constitution's provision that employees with titles other than "guard" may become members is similarly irrelevant, since no nonguards have in fact become members or been solicited for membership. *See Pinkerton's National Detective Agency, Inc.*, 124 N.L.R.B. 1076, 1078–79 (1959). If the union subsequently organizes or admits as members nonguards, decertification would be appropriate.

The Board's evaluation of the union's contacts with Local 44 seems sound. The issue is not whether the union is an offshoot of Local 44 personnel and goals, but whether the union, taking into account that it is still in its formative stages, independently formulates and carries out its policies. *See Wells Fargo Guard Services Division of Baker Protective Services, Inc.*, 236 N.L.R.B. 1196 (1978). The record supports the Board's resolution of this issue.

 Finally, the Board's decision that the lieutenants are supervisors but the sergeants and corporals are not is also supported by substantial evidence. The tasks the company points to as supervisory actually require little exercise of independent judgment. The sergeants collect information so that others can make decisions, and routinely direct nontitled guards to do the jobs others have assigned them. Their work falls outside section 2(11)'s definition of "supervisors." *See, e.g., NLRB v. Security Guard Service, Inc.*, 384 F.2d 143, 148 (5th Cir. 1967) ("the sergeant's basic work was identical to the work of the guard"; he was merely "advising and awaiting decision from others"). Given the Board's wide discretion in determining who falls within the statutory definition, *see Marine Engineers Beneficial Association v. Interlake Steamship Co.*, 370 U.S. 173, 179 n.6, 82 S.Ct. 1237, 1240 n.6, 8 L.Ed.2d 418 (1962), the Board's decision should not be disturbed.

Accordingly, the Board's order is hereby enforced in its entirety.

separate units. *See, e.g., J. W. Mays, Inc.*, No.

2–RC–18522 (Region 2, Nov. 19, 1979).