NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WGOK, INC., Respondent.

No. 23292.

United States Court of Appeals
Fifth Circuit.

Oct. 11, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Alan D. Eisenberg, Atty., N.L.R.B. Washington, D. C., for petitioner.

Willis C. Darby, Jr., Mobile, Ala., for respondent.

Before WISDOM and GODBOLD, Circuit Judges, and McRAE, District Judge.

GODBOLD, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order based upon a finding that Respondent, WGOK, Inc., discharged two employees in violation of Section 8(a) (3) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (3) & (1), and that Respondent refused to bargain with the exclusive bargaining representative of its radio engineers in violation of Section 8(a) (5) and (1) of the Act, 29 U.S.C.A. § 158(a) (5) & (1).

WGOK, Inc., operates a radio station in Mobile, Alabama. Ownership of the corporation is vested in three individuals, Jules Paglin, Stanley Ray and the station manager, Robert Grimes. Paglin and Ray also have a majority interest in five other separately incorporated radio stations located in three southern states. The only other stockholder in each of these stations is the particular local station manager.

The stations, known collectively as the "OK Group," maintain a central office in New Orleans, the expenses of which are shared by the individual stations. The books of account of all six stations are maintained in New Orleans, and billing for the stations' services is made from the central office. Each station pays its own ordinary expenses, but unusual expenses, such as the purchase of a new transmitter, are handled in consultation with Paglin and Ray. Sales for all the stations in the group are made by a national representative chosen by Paglin and Ray.

On May 13, 1963, Local 1264 of the International Brotherhood of Electrical Workers filed a petition with the Board requesting certification as the bargaining representative of WGOK's engineers, and the Board scheduled a representation hearing for June 6. An order directing elections was entered by the Regional Director, and the Board granted review of the Regional Director's decision limited to the appropriateness of the bargaining unit.

Meanwhile, as a result of being fired immediately after the representation hearing concluded on June 7, two part-time employees of WGOK, Carl Bouler and William Langley, filed section 8(a) (3) charges with the Board claiming that they were discharged because of union activity. A hearing in the discharge case began on September 30. Subsequently, on December 13, the Regional Director issued a complaint charging WGOK with an unfair refusal to bargain. The two cases were consolidated and after further hearings the Trial Examiner found that WGOK had violated the Act as charged. The Board affirmed this decision in all

respects material to this enforcement petition.

■ We are met at the outset with WGOK's contention that the Board acted beyond its self-imposed jurisdictional limitations. It has long been recognized that while the statutory jurisdiction of the Board extends to all activities "affecting commerce," 29 U.S.C.A. § 160(a), it may in its discretion decline to exercise such jurisdiction where the policies of the Act would not properly be· effectuated. See Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965); Guss v. Utah Labor Relations Bd., 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957); NLRB v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951).

■ In 1958 the Board lowered its jurisdictional standard for the communications industry from $200,000 gross receipts per year to $100,000 in an effort to "extend the Board's jurisdiction over communications systems to the maximum possible extent at this time and * * * [to] reasonably ensure that the Board will assert jurisdiction over all labor disputes involving such enterprises which tend to exert a pronounced impact on commerce." Raritan Valley Broadcasting Co., 122 N.L.R.B. 90, 92 (1958). The Board's announced intention was to extend the rights and protections of the Act to as many individuals, labor organizations and employers as its limited budget and personnel permitted. Id. at 91. In promulgating the new standard there was no intention to preclude the application of the Act to employers having less than $100,000 gross receipts per year where for other reasons the Board felt that a particular employer had a sufficient impact on commerce to warrant the exercise of its powers. See NLRB v. W. B. Jones Lumber Co., 245 F.2d 388 (9th Cir. 1957).

■ WGOK concedes that the Board had statutory jurisdiction to proceed; its argument is that since WGOK's gross income was only $89,000 in the year preceding the filing of these charges the Board was prevented by its own jurisdictional standards from proceeding against it. The argument has no merit. The extent to which the Board chooses to exercise its statutory jurisdiction is a matter of administrative policy within the Board's discretion, and in the absence of extraordinary circumstances whether jurisdiction should be exercised is for the Board, not the courts, to determine. NLRB v. Carroll-Naslund Disposal, Inc., 359 F.2d 779 (9th Cir. 1966); NLRB v. Stoller, 207 F.2d 305 (9th Cir., 1953), cert. denied, 347 U.S. 919, 74 S.Ct. 517, 98 L.Ed. 1074 (1954); see Optical Workers' Local 24859 v. NLRB, 229 F.2d 170 (5th Cir.), cert. denied, 351 U.S. 963, 76 S.Ct. 1027, 100 L.Ed. 1484 (1956); NLRB v. Townsend, 185 F.2d 378 (9th Cir. 1950). We are satisfied that no such extraordinary circumstances exist here.

We find that the Board erred in its determination of the appropriate bargaining unit and therefore deny enforcement of its order requiring WGOK to bargain. WGOK employs two full-time engineers. However, one engineer was considered to be in a supervisory category, so only one full-time employee, George Nations, was included in the unit. In addition to its full-time engineers, WGOK employed two part-time engineers, Bouler and Langley, during the summer months, when its broadcast period was expanded. The duties of the part-time engineers consisted of work on Saturdays and Sundays and filling in when the full-time engineers were on vacation. Although Bouler and Langley received the same rate of pay for the same work as the full-time employees, they received none of their fringe benefits. Both part-time employees were retained as full-time engineers at another radio station in the area, and their work at WGOK was arranged so that it would not interfere with their full-time jobs.

■■ The Board included both part-time engineers in the bargaining unit. WGOK contends that their employment was seasonal and that they did not have

a sufficient community of interest with the full-time employees to warrant inclusion in the unit. We agree.

The Board has long held that part-time seasonal employees who receive none of the fringe benefits enjoyed by full-time employees have insufficient common interest with the full-time employees to be included in the same bargaining unit. *E. g.*, Mon-Clair Grain & Supply Co., 131 N.L.R.B. 1096 (1961); Home Brewing Co., 124 N.L.R.B. 930 (1959); Brown-Forman Distillers Corp., 118 N.L.R.B. 454 (1957); Central Mutual Tel. Co., 116 N.L.R.B. 1663 (1956). Where, as here, the part-time employee's work schedule is arranged so as not to conflict with full-time employment elsewhere, the Board has held that such employees are not appropriately included in the unit. Haag Drug Co., 146 N.L.R.B. 798 (1964).

The Trial Examiner relied on two cases which modify somewhat the general principles set out above when applied to the radio broadcast industry. Booth Broadcasting Co., 134 N.L.R.B. 817 (1961); V.I.P. Radio, Inc., 128 N.L.R.B. 113 (1960). In these cases part-time engineers, who held full-time employment elsewhere, were included in the unit on the ground that there was a reasonable expectancy of continued regular employment on a part-time basis. We think these cases do not reach the situation presented here, where the part-time engineers were employed on a seasonal basis only and there was no reason to expect that they would become employed (for part-time work) on a year-round basis.

■ It is further argued that prior bargaining history demonstrates sufficient community of interest to warrant the inclusion of Bouler and Langley in the unit. From April, 1959, to May, 1963, the engineers were covered by a collective bargaining agreement between WGOK and the Electrical Engineers Union which established wage rates, grievance procedure and other terms of employment. For the purposes of that agreement Bouler and Langley were considered part of the unit. This evidences community of interest between the full-time and part-time engineers, but also demonstrates that community of interest extended only to the pay scale, which was the same for part-time and full-time engineers. Part-time employees were specifically excluded from coverage with regard to notice of layoff, severance pay, hospitalization and sick leave.

■ We are mindful that our review of the Board's unit determination is narrowly limited, see NLRB v. Schill Steel Prods., Inc., 340 F.2d 568, 574 (5th Cir. 1965), but nevertheless conclude that where the Board makes an unexplained departure from its established criteria for unit determination we should deny enforcement, NLRB v. Tallahassee Coca-Cola Bottling Co., 381 F.2d 863 (5th Cir., August 8, 1967), Rayonier, Inc. v. NLRB, 380 F.2d 187 (5th Cir. July 12, 1967).

■ With the part-time employees excluded, WGOK has only one employee, George Nations, to comprise the appropriate bargaining unit. It is fundamental that "the principle of collective bargaining presupposes that there is more than one eligible person who desires to bargain. The Act therefore does not empower the Board to certify where only one employee is involved." Luckenbach Steamship Co., 2 N.L.R.B. 181, 193 (1936); see National Container Corp., 99 N.L.R.B. 1492 (1952). Where occasional employees are excluded from the unit leaving only one employee, the unit is inappropriate and cannot be certified. Steamer Service Co., 58 N.L.R.B. 632 (1944).

■ The Trial Examiner rejected WGOK's contention that the discharge of Bouler and Langley immediately after the representation hearing was the result of these employees having swapped work time without causing the payroll records to reflect who actually worked at what time. The Examiner found this reason pretextual and concluded from the evidence that Bouler and Langley actually were discharged because of their activity on behalf of the Union. We are of the opinion that the evidence on the record

as a whole supports this conclusion and that the Board's order in this respect should be enforced.

The petition of the Board for enforcement of its order is granted as to the discriminatory discharge and denied as to the refusal to bargain.

Enforced in part and denied in part.