# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 15, 2022                    Decided July 8, 2022

No. 21-1111

TEMPLE UNIVERSITY HOSPITAL, INC.,
PETITIONER/CROSS-RESPONDENT

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT/CROSS-PETITIONER

TEMPLE ALLIED PROFESSIONALS, PENNSYLVANIA
ASSOCIATION OF STAFF NURSES AND ALLIED PROFESSIONALS,
INTERVENOR

———

Consolidated with 21-1124

———

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

———

*Shannon D. Farmer* argued the cause for petitioner/cross-respondent. With her on the briefs were *Meredith Swartz Dante* and *Rebecca A. Leaf.*

*Eric Weitz*, Attorney, National Labor Relations Board, argued the cause for respondent/cross-petitioner. With him on

the brief were *Jennifer A. Abruzzo*, General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *David S. Habenstreit*, Assistant General Counsel, and *Kira Dellinger Vol*, Supervisory Attorney.

*Jonathan Walters* argued the cause for intervenor Temple Allied Professionals, Pennsylvania Association of Staff Nurses and Allied Professionals in support of respondent/cross-petitioner. *Claiborne S. Newlin* entered an appearance.

Before: SRINIVASAN, *Chief Judge*, HENDERSON and JACKSON[*], *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*:  For more than four decades, labor relations between Temple University Hospital and the professional and technical employees working there occurred under the jurisdiction of the Pennsylvania Labor Relations Board.  In 2015, however, the labor union representing those employees petitioned the National Labor Relations Board to exercise jurisdiction over its relationship with the Hospital.  Over the Hospital's objections, the NLRB granted the petition, asserted jurisdiction, and certified the union as the representative of an expanded unit of employees.

Dissatisfied with that result, the Hospital refused to bargain with the union and eventually filed a petition for review in this court.  Although the Hospital raised several arguments, we considered only one:  its contention that the union was judicially estopped from invoking the NLRB's jurisdiction because the union had previously insisted that the NLRB in fact

---

[*] Circuit Judge, now Justice, Jackson was a member of the panel at the time the case was argued but did not participate in the opinion.

lacked jurisdiction. Siding with the Hospital, we held that the NLRB had misapplied the relevant judicial-estoppel analysis and remanded for further proceedings. *See Temple Univ. Hosp., Inc. v. NLRB*, 929 F.3d 729, 735–37 (D.C. Cir. 2019).

On remand, the NLRB again asserted jurisdiction over the Hospital after determining that principles of judicial estoppel are inapplicable. The Hospital continues to resist that result, and it renews the additional arguments we had no occasion to address in 2019. Because the Hospital identifies no error in the NLRB's decision, we deny the petition for review and grant the Board's cross-application for enforcement.

## I.

## A.

The National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, guarantees employees the right "to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. Section 8 of the Act bars employers from engaging in a host of unfair labor practices. Among them, an employer may not "refuse to bargain collectively with the representatives of his employees." *Id.* § 158(a)(5). Although the NLRA defines "employer" broadly, the statute specifically exempts "any State or political subdivision thereof." *Id.* § 152(2).

Under Section 9 of the Act, a labor organization or group of employees may file a petition with the National Labor Relations Board (NLRB or Board) alleging that a substantial number of employees wish to be represented for collective bargaining and that their employer has declined to recognize their representative. *Id.* § 159(c)(1)(A). Upon the filing of a petition, the Board must decide "the unit appropriate for the purposes of collective bargaining." *Id.* § 159(b). A

representative becomes the exclusive representative of employees in a particular collective-bargaining unit upon a majority vote of the relevant employees and the Board's certification of the results. *Id.* § 159(a)–(c).

The Board has provided specific instruction concerning the appropriate composition of bargaining units in the health care setting since 1989, when it promulgated what has become known as the Health Care Rule. *See* 29 C.F.R. § 103.30; *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 608, 615–17 (1991). Applicable to acute-care hospitals, the Health Care Rule sets out eight units as the "only appropriate units" for purposes of representation petitions filed under the NLRA. 29 C.F.R. § 103.30(a). Although units not described in the Health Care Rule are deemed nonconforming, *id.* § 103.30(f)(5), the Rule provides that combinations of the enumerated units may be appropriate and excepts preexisting nonconforming units from its requirements, *id.* § 103.30(a).

The Board, of course, is not the only labor relations authority in the country. Although the Board retains exclusive jurisdiction over activities "arguably subject" to the NLRA, state labor boards administer and enforce their own labor laws against entities outside the Board's jurisdiction. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–46 (1959). Occasionally, the Board will exercise jurisdiction over a particular bargaining relationship previously under the supervision of a state agency. In such circumstances, the Board generally extends "comity" to the state agency's elections and certifications, "provided that the state proceedings reflect the true desires of the affected employees, election irregularities are not involved, and there has been no substantial deviation from due process requirements." *Allegheny Gen. Hosp.*, 230 N.L.R.B. 954, 955 (1977). When it extends comity, the Board

accords the "same effect to the elections and certifications of responsible state government agencies" as its own. *Id.*

B.

Our 2019 opinion in this case sets out the relevant factual background, *see Temple Univ. Hosp.*, 929 F.3d at 731–33, but we recount the key points here. Temple University Hospital is an acute-care hospital located in Philadelphia, Pennsylvania. Acquired in 1910 by Temple University—a state-related university also based in Philadelphia—the Hospital initially functioned as an unincorporated division of the University. That changed in 1995, when the Hospital became a distinct nonprofit corporation. The sole shareholder of that corporation is Temple University Health System, a holding company the University created for its healthcare-related assets. As an independent corporate entity, the Hospital generally conducts its own collective bargaining and handles personnel decisions for non-executive employees. But the University and the Hospital nonetheless retain a number of close operational and budgetary ties.

In 2005, the Temple Allied Professionals, Pennsylvania Association of Staff Nurses and Allied Professionals (the Union) filed a petition with the Pennsylvania Labor Relations Board (PLRB) to represent a previously certified bargaining unit of professional and technical employees—a unit that a different union had represented since the 1970s. In the ensuing proceedings, both the Union and the Hospital contended—over the then-incumbent union's opposition—that the PLRB, rather than the NLRB, properly had jurisdiction over the Hospital. The PLRB agreed, and the Union prevailed in the subsequent election. It has represented the unit ever since.

Ten years later, in 2015, the Union petitioned the NLRB to assert jurisdiction over its relationship with the Hospital, notwithstanding the Union's repeated prior invocations of the PLRB's authority. The specific basis for the Union's petition was its desire to add two classifications of unrepresented Hospital employees—professional medical interpreters and transplant financial coordinators, comprising a total of eleven individuals—to the existing professional-technical bargaining unit. The petition asked the NLRB to conduct an election in which the petitioned-for employees would vote on whether to join the existing unit.

The Hospital mounted several defenses. First, it contended that the Union should be judicially estopped from invoking the Board's jurisdiction because of the Union's prior representations that the PLRB, not the NLRB, had jurisdiction over the Hospital. Second, it maintained that the Hospital was a "political subdivision" of Pennsylvania and therefore exempt from the Board's jurisdiction. *See* 29 U.S.C. § 152(2). Third, it argued that the Board should decline to exercise its jurisdiction on account of the close ties between the Hospital and the University. Finally, it submitted that the Board should not extend comity to the PLRB's certification of the professional-technical unit.

An Acting Regional Director of the NLRB ruled in favor of the Union. Rejecting each of the Hospital's arguments, he asserted jurisdiction over the Hospital and extended comity to the PLRB's certification of the professional-technical unit. The Union won the ensuing election among the petitioned-for interpreters and financial coordinators, and the Acting Regional Director certified it as the exclusive collective-bargaining representative of the newly expanded professional-technical unit.

The Board affirmed the Acting Regional Director's decision. Seeking to contest the validity of the Board's certification of the Union, the Hospital refused to bargain with the Union. The Union filed an unfair-labor-practice charge with the Board, which found that the Hospital had violated the NLRA. The Hospital then lodged a petition for review in this court.

Although the Hospital briefed each of the four primary arguments it had pressed before the Board, we reached only its first contention concerning judicial estoppel. We agreed with the Hospital that the Board had misapplied the judicial-estoppel analysis prescribed by the Supreme Court. *Temple Univ. Hosp.*, 929 F.3d at 735–36 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–52 (2001)). We remanded the case for further proceedings.

On remand, the Board again declined to estop the Union from invoking its jurisdiction. But its path to that result was different. Instead of assuming the availability of judicial estoppel in Board proceedings and nonetheless declining to apply it based on a balancing of the relevant factors, the Board this time concluded that judicial estoppel "is not available in proceedings . . . where the Board's jurisdiction is in issue," such that the doctrine's application "could compel the Board to surrender its jurisdiction." Supplemental Decision and Order at 1–2, J.A. 169–70. With judicial estoppel off the table, the Board reaffirmed its prior determination that the Hospital's refusal to bargain with the Union violated the NLRA. *Id.* at 4, J.A. 172.

The Hospital once again petitions for review, and the Board cross-applies for enforcement of its order. The Union has intervened in support of the Board's decision.

8

II.

The Hospital contends that the Board improperly asserted jurisdiction over this dispute and erroneously extended comity to the PLRB's prior certification of the professional-technical bargaining unit. A court "must uphold the judgment of the Board unless its findings are unsupported by substantial evidence, or it acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Novato Healthcare Ctr. v. NLRB*, 916 F.3d 1095, 1100 (D.C. Cir. 2019). We find no error in the Board's decision.

A.

The Hospital first argues that the doctrine of judicial estoppel should have foreclosed the Union's attempt to invoke the Board's jurisdiction. Judicial estoppel generally "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire*, 532 U.S. at 749 (quoting 18 Moore's Federal Practice § 134.30 (3d ed. 2000)). According to the Hospital, the Union's prior insistence that the PLRB—and not the NLRB—properly had jurisdiction over the Hospital should estop the Union from reversing course in this case.

Whether a nonjudicial tribunal such as the Board "may itself invoke judicial estoppel appears to be an issue of first impression." *Temple Univ. Hosp.*, 929 F.3d at 734. But we need not consider that question here, for the Board did not resolve it. Instead, the Board made a threshold determination that, while judicial estoppel might be available in certain Board proceedings, the doctrine is unavailable when its "application . . . could compel the Board to surrender its jurisdiction." Supplemental Decision and Order at 2, J.A. 170. That is, the Board concluded that a party cannot rely on judicial

estoppel to prevent the Board from entertaining a matter that would otherwise fall within its statutory authority.

As judicial estoppel is an "equitable doctrine" invoked by a tribunal "at its discretion," *New Hampshire*, 532 U.S. at 750 (citation omitted), we review the Board's "decision . . . not to invoke[] judicial estoppel for abuse of discretion." *Temple Univ. Hosp.*, 929 F.3d at 734. In doing so, we confine our review to the adequacy of the reasons articulated in the Board's order. *Erie Brush & Mfg. Corp. v. NLRB*, 700 F.3d 17, 23 (D.C. Cir. 2012). The Board did not abuse its discretion in determining that judicial estoppel is unavailable in cases in which the Board's jurisdiction is at issue.

The Board centrally grounded that conclusion in "[f]ederal labor policy," which, to the Board, "weighs heavily against allowing judicial estoppel to be used as a ground to limit [its] jurisdiction." Supplemental Decision and Order at 3, J.A. 171. The Board located the relevant pro-enforcement policy in Section 10(a) of the NLRA. *See* 29 U.S.C. § 160(a). That provision "empower[s]" the Board "to prevent any person from engaging in any unfair labor practice (listed in [Section 8] of [the Act]) affecting commerce," a power that "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." *Id.*

The Board reasoned that, if judicial estoppel were to apply here, the PLRB would have jurisdiction over all representation petitions and unfair-labor-practice charges brought by the Union against the Hospital and could issue rulings the Board would have no power to review. The Board declined to establish a doctrine under which "the power Congress endowed [the Board] with in Section 10(a) could be surrendered to the parties and the history of their petition-filing and litigation

choices over time." Supplemental Decision and Order at 4, J.A. 172. "Even assuming Section 10(a) would permit this," the Board explained, "the federal policy embodied in that statutory provision convinces us that we ought not do so." *Id.*

The Board permissibly concluded that Congress's broad conferral of statutory authority to prevent "*any* person" from committing "*any* unfair labor practice" affecting commerce—notwithstanding the existence of "*any* other" law—militated against enabling judicial estoppel to prevent the Board from exercising its authority in cases in which it could otherwise act. 29 U.S.C. § 160(a) (emphases added). The Board "has the primary responsibility for developing and applying national labor policy." *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 786 (1990). And we cannot say that the Board abused its discretion in determining that "plac[ing] [its] jurisdictional powers in the hands of litigants" would be at odds with Congress's broad empowerment of the Board to enforce the NLRA in cases satisfying the Act's jurisdictional prerequisites. Supplemental Decision and Order at 3, J.A. 171; *cf. Hammontree v. NLRB*, 925 F.2d 1486, 1491–92 (D.C. Cir. 1991) (construing Section 10(a)'s "affirmative grant of authority to the Board" as providing that "no one *other than* the Board shall diminish the Board's authority over [unfair-labor-practice] claims"); *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226 (1963) ("This Court has consistently declared that in passing the [NLRA], Congress intended to and did vest in the Board the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause.").

The Hospital points out that the Board's jurisdiction is discretionary and not mandatory. The Board, though, recognized as much, acknowledging that it "does not always exercise the power Congress granted it in Section 10(a)." Supplemental Decision and Order at 4, J.A. 172. The fact that

the Board may at times decline to exercise its jurisdiction is by no means inconsistent with its choice to avoid a regime in which the petition-filing practices of private parties—rather than the Board's own discretionary decisions—could prevent it from hearing a dispute it would otherwise entertain.

In addition to its reliance on federal labor policy, the Board also considered judicial precedent and its own decisions. As for the former, the Board observed that "federal courts have generally declined to apply judicial estoppel to create or defeat jurisdiction." *Id.* at 3, J.A. 171 (citing *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1006 n.6 (9th Cir. 2010); *Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004); *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000)). As for its own precedent, the Board relied on two decisions in which it asserted jurisdiction over bargaining relationships notwithstanding the parties' historically inconsistent positions on whether jurisdiction in fact existed. *Id.* at 4, J.A. 172 (citing *Wyndham West at Garden City*, 307 N.L.R.B. 136 (1992) (advisory opinion); *We Transport, Inc.*, 215 N.L.R.B. 497 (1974)).

The Hospital is correct that neither judicial nor administrative precedent compelled the Board to conclude that litigants cannot use judicial estoppel as a means of limiting the Board's jurisdiction. But the Board did not suggest otherwise. It instead considered nonbinding judicial precedent only as a "preliminar[y]" matter, and it acknowledged that court decisions did not uniformly point in one direction. *Id.* at 3, J.A. 171 (citing *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 34 (1st Cir. 2018)). And with regard to its own precedent, it recognized that the applicability of judicial estoppel in Board proceedings is an issue it "has not squarely addressed." *Id.* at 2, J.A. 170. At bottom, the Board permissibly reasoned that judicial and administrative precedent generally reinforced its

policy-driven decision to make judicial estoppel unavailable in the circumstances of this case.

Contrary to the Hospital's contention, the Board did not flout this court's 2019 decision in this case. There, we remanded in part "for the Board to determine in the first instance whether judicial estoppel is available in NLRB proceedings." *Temple Univ. Hosp.*, 929 F.3d at 737. The Board could save that broader question for another day and determine that, even assuming judicial estoppel may be available in some proceedings, it cannot be used to defeat the Board's jurisdiction.

## B.

The Hospital next challenges the Board's determination that the Hospital is not a political subdivision of Pennsylvania exempt from the NLRB's jurisdiction. We see no basis to set aside the Board's conclusion.

Section 8 of the NLRA enumerates unfair labor practices that an "employer" may not perform, 29 U.S.C. § 158(a), and the Act defines "employer" to exclude "any State or political subdivision thereof," *id.* § 152(2). Although the statute does not further define "political subdivision," the Supreme Court has upheld the Board's construction of the term to mean an entity that is either "(1) created directly by the state, so as to constitute [a] department[] or administrative arm[] of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *NLRB v. Nat. Gas Util. Dist. of Hawkins Cty.*, 402 U.S. 600, 604–05 (1971). An entity satisfying either prong of that test is not a statutory "employer" and falls outside the Board's jurisdiction. *Midwest Div.-MMC, LLC v. NLRB*, 867 F.3d 1288, 1296 (D.C. Cir. 2017).

All agree that the Hospital was not "created directly by the state." *Hawkins Cty.*, 402 U.S. at 604. The sole question, then, is whether the Hospital is "administered by individuals who are responsible to public officials or to the general electorate." *Id.* at 604–05. Under that prong of the *Hawkins County* test, "the pertinent question is 'whether a majority of the individuals who administer the entity . . . are appointed by and subject to removal by public officials.'" *Midwest Div.-MMC*, 867 F.3d at 1297 (alteration in original) (quoting *Pilsen Wellness Ctr.*, 359 N.L.R.B. 626, 628 (2013)). In *Midwest Division-MMC*, the employer (also an acute-care hospital) offered no evidence that the members of the relevant peer review committee (the entity in question) were either appointed or removable by public officials. In those circumstances, the Board reasonably determined that the hospital committee did not qualify as an exempt political subdivision. *Id.*

The same reasoning controls here. As the Acting Regional Director explained, "no government entity has the authority to appoint or remove a Hospital board member, and no member of the board . . . is a government official or works for a government entity." Regional Director's Decision and Direction of Election at 14, J.A. 82. The Hospital's board members, rather, are "subject solely to private appointment and removal." *Id.* Because a majority of the Hospital's board members are neither appointed by nor subject to removal by public officials (indeed, none are), the Hospital is not "administered by individuals who are responsible to public officials or to the general electorate." *Hawkins Cty.*, 402 U.S. at 604–05.

Invoking a non-precedential advice memorandum issued by the NLRB's General Counsel, the Hospital points to additional factors purportedly establishing that it is an exempt

political subdivision. As the Board explained, however, "[w]here an examination of the appointment-and-removal method yields a clear answer to whether an entity is administered by individuals who are responsible to public officials or to the general electorate, the Board's analysis properly ends." Order Granting Review in Part at 2 n.2, J.A. 147 (quotation marks omitted) (quoting *Pa. Virtual Charter Sch.*, 364 N.L.R.B. No. 87, at *13 (2016)). The Hospital does not challenge that controlling standard—a standard that this court and numerous others have consistently applied. *See, e.g.*, *Midwest Div.-MMC*, 867 F.3d at 1297; *Voices for Int'l Bus. & Educ., Inc. v. NLRB*, 905 F.3d 770, 776–77 (5th Cir. 2018) (collecting cases); *cf. Yukon-Kuskokwim Health Corp. v. NLRB*, 234 F.3d 714, 717 (D.C. Cir. 2000) ("[T]he Board has long and reasonably preferred bright line rules in order to avoid disputes over its jurisdiction."). The Board thus reasonably determined that the Hospital does not qualify as a political subdivision of Pennsylvania.

## C.

The Hospital next contends that, insofar as the Board had jurisdiction, the Board should have declined to exercise it. It is true that the Board may properly decline to exercise jurisdiction if it concludes that "the policies of the [NLRA] would not be effectuated by its assertion of jurisdiction." *NLRB v. Denver Bldg. & Constr. Trades Council*, 341 U.S. 675, 684 (1951); *accord Temple Univ. Hosp.*, 929 F.3d at 732 n.*. That decision, though, is inherently a discretionary one. While the Board may not act arbitrarily or cause an employer unfair and substantial prejudice, its discretionary determination to assert jurisdiction is otherwise "essentially unreviewable." *Hum. Dev. Ass'n v. NLRB*, 937 F.2d 657, 661 (D.C. Cir. 1991) (quoting *NLRB v. Kemmerer Vill., Inc.*, 907 F.2d 661, 663–64 (7th Cir. 1990)). Indeed, we have long emphasized "the broad

scope of the Board's discretion in determining whether an abstention from jurisdiction is likely to promote the objectives of the Act." *Herbert Harvey, Inc. v. NLRB*, 424 F.2d 770, 782 (D.C. Cir. 1969). "[I]n the absence of extraordinary circumstances whether jurisdiction should be exercised is for the Board, not the courts, to determine." *Id.* at 783 (quoting *NLRB v. WGOK, Inc.*, 384 F.2d 500, 502 (5th Cir. 1967)).

The Hospital nonetheless contends that the Board abused its discretion by exercising jurisdiction in this case. The Hospital emphasizes its close ties to the University, over which the Board a half-century ago declined to assert jurisdiction in light of the University's "unique relationship" with Pennsylvania. *See Temple Univ.*, 194 N.L.R.B. 1160, 1161 (1972). As the Board explained, however, its more recent practice has been to "assert jurisdiction over an employer, despite its close ties with an exempt government entity, as long as it meets the definition of employer set out in Section 2(2) of the Act and the applicable monetary jurisdictional standards." Decision on Review and Order at 2, J.A. 149 (citing *Mgmt. Training Corp.*, 317 N.L.R.B. 1355, 1358 (1995)). The Board reasonably found both criteria satisfied, explaining that the Hospital "possesses sufficient control over its employees' terms and conditions of employment" and that there was "no dispute that the [Hospital] meets the Board's monetary jurisdictional standards." *Id.*

The Board also permissibly rejected the Hospital's claim that asserting jurisdiction would substantially prejudice the Hospital by disrupting existing bargaining relationships under Pennsylvania law. As the Board reasonably determined, "[t]he stable bargaining relationship has been between the [Hospital] and Union, not between the [Hospital] and the PLRB." *Id.* at 3, J.A. 150 (quoting *MCAR, Inc.*, 333 N.L.R.B. 1098, 1104 (2001)). The Board explained that it has repeatedly exercised

jurisdiction even when a state agency such as the PLRB had previously asserted jurisdiction. *Id.* And the Board reasonably declined to consider the Union's purpose for invoking the Board's jurisdiction, as well as the Hospital's offers to add the petitioned-for employees to the existing bargaining unit under Pennsylvania law. While the Board could have afforded greater weight to such considerations, its decision not to do so evinces no abuse of discretion.

D.

The Hospital's final contention is that the Board erroneously extended comity to the PLRB's previous certification of the professional-technical bargaining unit. The Board, the Hospital maintains, should not have accorded the "same effect to the elections and certifications of" the PLRB as the Board's own, *Allegheny Gen. Hosp.*, 230 N.L.R.B. at 955, but rather should have required a new representation petition, held a federally administered election, and itself certified the bargaining unit upon a majority vote of the relevant employees.

The Hospital contends that extending comity was improper for two reasons: (i) the PLRB-certified unit is inconsistent with the Board's Health Care Rule; and (ii) the Board arbitrarily departed from its own precedent. Neither argument has merit.

1.

Under the Board's Health Care Rule, two of the eight permissible bargaining units in acute-care hospitals are "[a]ll professionals except for registered nurses and physicians" and "[a]ll technical employees." 29 C.F.R. § 103.30(a)(3)–(4). Any deviating unit is nonconforming—except that, as relevant here, the Rule allows both combinations of the eight units and

nonconforming units that existed at the time of the Rule's promulgation in 1989. *Id.* § 103.30(a), (f)(5). In this case, the Board determined that both of those exceptions applied. Specifically, the PLRB-certified unit was a "combination of two of the eight specified units"—i.e., professionals and technical employees. Decision on Review and Order at 4, J.A. 151. Alternatively, "even assuming the unit is non-conforming, it was and still is an 'existing non-conforming unit[]'" within the meaning of the Rule because the unit was originally certified by the PLRB in 1975 and its composition "has largely remained the same" in the years since. *Id.* (quoting 29 C.F.R. § 103.30(a)).

We sustain the Board's decision on that latter ground, which the Board made clear was an independent basis for its order. "We accord the Board an especially wide degree of discretion on questions of representation." *Rush Univ. Med. Ctr. v. NLRB*, 833 F.3d 202, 206 (D.C. Cir. 2016) (quotation marks and citation omitted). The Board acted within its discretion in determining that the professional-technical bargaining unit was an "existing" unit at the time of the Health Care Rule's promulgation.

The Hospital correctly points out that the unit has changed in some respects since its original certification by the PLRB in 1975. But the Board reasonably determined that the changes did not cause the unit to run afoul of the Rule. While the unit had a different collective-bargaining representative in 1975, the Board permissibly found that the mere change in representation did not divest the unit of its existing nonconforming status. Decision on Review and Order at 4, J.A. 151; *see Crittenton Hosp.*, 328 N.L.R.B. 879, 880 (1999). As for adjustments in the unit's scope, the Board reasonably determined that a unit whose composition "has largely remained the same" over the past half-century retains its identity as an existing

nonconforming unit. Decision on Review and Order at 4, J.A. 151. This court has previously upheld the Board's understanding that the mere addition of new employees to a preexisting nonconforming unit does not instantly require the expanded unit to comply with the Health Care Rule's strictures. *See Rush Univ. Med. Ctr.*, 833 F.3d at 204, 207–09. And to the extent the 1975-certified unit contained some employee groups that are no longer part of the unit, the unit still represents professional and technical employees at the Hospital.

2.

The Hospital contends that the Board's extension of comity in this case constituted an arbitrary departure from its decision in *Summer's Living Systems, Inc.*, 332 N.L.R.B. 275 (2000). In that proceeding, the Board declined to extend comity to a unit certified by a state board that lacked jurisdiction at the time it issued the certification. According to the Hospital, if the Union is correct that the Board has jurisdiction over the Hospital, then the Board also had jurisdiction in 2006, meaning that the PLRB lacked jurisdiction at the time it most recently certified the unit. Under *Summer's Living Systems*, the Hospital maintains, the Board could not extend comity to the PLRB's purportedly invalid certification.

The Board, however, adequately accounted for *Summer's Living Systems* and reasonably distinguished that decision. In *Summer's Living Systems*, the Board considered whether to extend comity to a series of certifications issued by a Michigan state labor agency. As *Summer's Living Systems* explained, the Michigan Court of Appeals later determined that the state agency's jurisdiction to issue the relevant certifications had been preempted by the Board's jurisdiction. In those circumstances, the Board declined to extend comity to the

preempted state certifications. *Summer's Living Sys.*, 332 N.L.R.B. at 276–77 & n.7, 286.

The Board thus explained here that *Summer's Living Systems*, unlike this case, involved an "intervening state court case" holding that the "state's jurisdiction over various units of employees was pre-empted by the Board's jurisdiction." Decision on Review and Order at 4–5 n.7, J.A. 151–52. In light of those contrasting circumstances, the Board reasonably determined that *Summer's Living Systems* "does not control" this case. *Id.* Comity to a state agency's determination, after all, is a doctrine aimed at respecting not only the preferences of employees and employers, but also the administrative processes giving rise to the state agency's decision. *See Allegheny Gen. Hosp.*, 230 N.L.R.B. at 955. The Board could permissibly grant comity here while withholding it in circumstances in which a state court deems the state labor agency to have lacked jurisdiction to issue the certifications to which comity might otherwise extend.

\* \* \* \* \*

For the foregoing reasons, we deny the petition for review and grant the Board's cross-application for enforcement of its order.

*So ordered.*